IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMINICK P.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23 C 15046 |
| v. ) | |
| ) | Magistrate Judge |
| MARTIN J. O'MALLEY, ) | Maria Valdez |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dominick P.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 17] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On April 6, 2020, Plaintiff filed claims for DIB and SSI, alleging disability since January 1, 2013. Plaintiff's application for SSI was approved as of April 6, 2020, the date he applied for benefits. However, following a hearing before an Administrative Law Judge ("ALJ"), Plaintiff's claim for DIB was ultimately denied on December 21, 2021. On July 29, 2022, the Social Security Administration Appeals Council vacated the ALJ's decision and remanded the case. A telephonic remand hearing was held on March 8, 2021, and all participants attended the hearing by telephone. Plaintiff was represented by counsel and was present at the hearing. Plaintiff did not testify as he had already testified at the prior hearing. A vocational expert ("VE") did testify.

On March 31, 2023, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's March 31, 2023 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

In the ALJ's March 31, 2023 decision, he explained at the outset:

The claimant alleges disability since January 1, 2013. Since the claimant filed for benefits on April 6, 2020, and his date last insured is March 31, 2018, the critical date [on] which he must be disabled is March 31, 2018, based on the retroactive nature of his April 6, 2020 claim, a year plus the waiting period retroactivity. If he is not disabled on that date, there would be a break in the continuity of any potential

>disability within the reach of his application. Therefore, the undersigned focuses on this particular critical date, March 31, 2018.

(R. 17.) The ALJ then undertook the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2013 through his date last insured of March 31, 2018. At step two, the ALJ concluded that Plaintiff had the following severe impairments as of March 31, 2018: severe depression; anxiety; panic disorder with agoraphobia; and schizoaffective disorder. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following additional limitations: was limited to simple, routine tasks; and was limited to occasional interaction with the public, coworkers, and supervisors. At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a sales attendant. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that, on the date last insured, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he was not disabled under the Social Security Act on March 31, 2018.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ did not properly account for Plaintiff's moderate limitations in concentration, persistence, or pace; (2) the ALJ did not properly consider Plaintiff's panic disorder with agoraphobia; (3) the ALJ failed to consider Plaintiff's statements that his mental condition worsened after his mother's death; (4) the ALJ failed to consider Plaintiff's agoraphobia, lack of insurance, and psychotropic medication side effects with respect to Plaintiff not seeking more intense mental health treatment; (5) the ALJ failed to consider the chronicity of Plaintiff's mental impairments and certain third party statements; (6) the ALJ failed to consider whether the opinions of Drs. Casto-Alvear and Hakimi were supported and consistent with other evidence in the record; and (7) the ALJ violated Plaintiff's right to procedural due process with respect to his representative's questioning of the VE.

For his second argument, Plaintiff contends that the ALJ did not sufficiently account for his panic disorder with agoraphobia. Pertinent to that assertion, as stated above, the ALJ determined that Plaintiff's panic disorder with agoraphobia constituted a severe impairment. (R. 19.) An impairment is considered "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1522(a). So, in deeming Plaintiff's panic disorder with agoraphobia to be severe, the ALJ necessarily determined that those conditions caused significant functional work limitations. Yet, aside from passing notations,

7

the ALJ made no attempt whatsoever to explicitly explain what work limitations were associated with Plaintiff's panic disorder with agoraphobia, nor did he explicitly consider the impact of those conditions on Plaintiff's residual functional capacity. *See Christopher M. L. v. Kijakazi*, No. 20 C 6407, 2022 WL 3445499, at \*2 (N.D. Ill. Aug. 17, 2022) ("The ALJ noted that plaintiff reported panic attacks, but she did not address, let alone explain why she rejected, the wealth of evidence about the consistency, frequency, severity, and impact of those attacks.") (citation omitted); *Ohms v. Barnhart*, No. 04 C 5365, 2005 WL 5178687, at \*12 (N.D. Ill. Oct. 26, 2005) ("It is unclear how the ALJ could make a determination on Claimant's ability to work without affirmatively determining how often Claimant could not leave the house or might have to leave work early due to panic or asthma attacks."); *Ferere v. Barnhart*, No. 03 C 2891, 2004 WL 842517, at \*9 (N.D. Ill. Apr. 19, 2004) ("[T]he ALJ should have at least considered how Ms. Ferere's napping requirements and panic attacks might have impacted her ability to hold down a regular job, and he does not appear to have done so."); *cf. Tincher v. Colvin*, No 13 C 8410, 2015 WL 4253632, at \*7 (N.D. Ill. July 14, 2015) ("Even if the ALJ had valid reasons for finding that Plaintiff's panic disorder was not a severe impairment, she was still required to account for its effects on his RFC.").

Ultimately, the Court agrees with Plaintiff that the ALJ's assessment of his panic disorder with agoraphobia falls far short of what is required. To the extent the RFC limitations included by the ALJ were meant to accommodate Plaintiff's panic attacks and fear of leaving the house, the ALJ provided no explanation on those

8

issues and the requisite logical bridge is missing. The ALJ's errors in that regard require that this matter be remanded. *See Lorena T. v. Saul*, No. 18-CV-6348, 2020 WL 977967, at *9 (N.D. Ill. Feb. 28, 2020) ("On remand, the ALJ must explain the connection between the evidence of Lorena's panic attacks and his conclusion that she could sustain a fulltime job with 'normal breaks.'"); *Rentfro v. Colvin*, No. 14-CV-3015, 2015 WL 12868081, at *14 (C.D. Ill. Oct. 21, 2015) ("If Rentfro's agoraphobia was a severe impairment, the ALJ should address more directly on remand how her agoraphobia affected her RFC.").

For his final argument, Plaintiff asserts that the ALJ violated his right to procedural due process when he refused to allow the VE to answer Plaintiff's counsel's questions about probationary periods for jobs. The ALJ disallowed the VE from answering that line of questioning, stating that probationary periods are not "germane" and "not relevant." (R. 92.) Defendant maintains that the ALJ was correct in that regard because "nothing in the regulations makes a distinction between being able to perform a job and how it would be performed during a probationary period." (Def.'s Memo. At 14.) However, Plaintiff is correct that "[t]he regulations do not provide that a claimant is teleported into a job after the job's probationary period." (Pl.'s Reply at 3.) Moreover, and in any event, probationary periods may be relevant to a claimant's ability to successfully perform a job based on his residual functional capacity and, pertinent here, his ability to interact with supervisors and coworkers. *See Sandy C. v. Kijakazi*, No. 421CV00173KMBTWP, 2023 WL 2133835, at *5 (S.D. Ind. Feb. 21, 2023) ("Because Sandy would be unable

9

to have more than occasional contact with supervisors and coworkers as required during a probationary period for any job she could obtain, she would be unable to sustain her employment. This is true even if the probationary period is by its nature temporary, as the Commissioner argues."). Accordingly, on remand, the ALJ should not disallow the VE from answering questions regarding job probationary periods.

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that Plaintiff's limitations in concentration, persistence, or pace are properly accounted for, Plaintiff's course of treatment is properly considered, the long-term nature of Plaintiff's conditions is properly assessed, and the medical opinions are properly weighed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 17] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**          **ENTERED:**

**DATE:**    **May 21, 2024**          _____
                                                           **HON. MARIA VALDEZ**
                                                           **United States Magistrate Judge**